Dear Mr. Privat:
I am in receipt of your request on behalf of the Acadia Parish School Board for an Attorney General's opinion concerning the following:
 1. Is it legal for the Acadia Parish School District to receive dedicated monies from the Crowley High Athletic Booster Club to supplement one or more coaches' salaries?
 2. If there is an adopted salary schedule in place, can the Acadia Parish School Board pay one or more individuals beyond the scheduled amount?
 3. Is it legal for the School Superintendent or any supervisor or principal to negotiate a salary beyond the scheduled amount without explicit approval of the Acadia Parish School Board?
LSA-R.S. 17:81 sets forth the general powers and duties of city and parish school boards. Section A which addresses the salaries of teachers states the following:
 A. (1) Each city and parish school board shall determine the number of schools to be opened, the location of school houses, the number of teachers to be employed, and select teachers and all other certified personnel from recommendations made by the city or parish superintendent as required by this Subsection. The boards shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that it is not the purpose of this Section to require or direct the reduction of any salary, or salary schedule, presently in force. The boards shall see that the provisions of the state school law are complied with. (Emphasis added).
Additionally, LSA-R.S. 17:422A states the following concerning additional compensation for special teachers including coaches. It states:
 Nothing contained in R.S. 17:421 shall prevent parish or city school boards from providing additional compensation or increased increments, for special teachers, such as principals, assistant principals, coaches, librarians, agriculture teachers, home economics teachers, music teachers, or any other teachers; and furthermore the parish and city school boards shall provide that no teacher will receive less than the salary received during 1955-1956 for 9 months' work.
In Attorney General Opinion No. 86-28, our office addressed the issue of whether a coach could be paid a bonus from either a public or non-public source, i.e., funds raised by school activities. We opined:
 . . . that a bonus may not be raised by school activities and paid to that school's coach by either the groups themselves or the school board as it would violate La. R.S. 42:1111A. However, if this procedure is made available to all schools and the money is paid by the school board each month with reimbursement from the local school, then the money becomes a supplement to salary allowed under LSA-R.S. 17:422. Such a procedure must be in accordance with the guidelines set by the legislator auditor for the use of activity funds.
Additionally, you submitted the same opinion request to the Louisiana Board of Ethics. Concerning your first question, the Board stated:
 The Code of Governmental Ethics would appear to prohibit the Acadia Parish School District from receiving dedicated monies from the Crowley High Athletic Booster Club to supplement one or more coaches' salaries. Section 1111A of the Code prohibits a public servant from receiving any thing of economic value, other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position. However, the Board is of the opinion that the Code of Governmental Ethics does not prohibit an agency from receiving and utilizing unrestricted donations made by nonprohibited sources of income. (Prohibited sources of income are persons who have or are seeking a business, contractual or financial relationship with the public servant's agency, who are regulated by the public employees's agency, or who has substantial economic interests which may be substantially affected by the performance or non-performance of the public employee's official duties.) Accordingly, the Board instructed me to inform you that the Code would not appear to prohibit the Crowley High Athletic Booster Club from making an unrestricted donation to the school board. The school board could then utilize those funds in any manner not otherwise prohibited by law.
Therefore, a booster club may donate monies to a local school and subsequently, the school may donate monies to the school district provided the donation is not restricted. If the school board elects to use those funds to supplement salaries of its coaches this is permissible.
In answer to your second question, if there is an adopted local salary schedule in place, you must look to the language used in that salary schedule. As discussed in Attorney General Opinion No. 95-134:
 . . . local school boards may not deny a teacher a scheduled state step increase under LSA-R.S. 17:421.3. The minimum salary schedule set forth in that statute is mandatory and, therefore, local school boards are constrained to follow the statutes.
In Attorney General Opinion No. 80-1209 our office addressed the issue of whether or not local school boards can pay qualified teachers a salary commensurate with the salary of those holding a `Specialist in Education' degree. The author of the opinion citedMouras vs. Jefferson Parish School Board, 300 So.2d 540 (4th Cir. 1974), wherein the Court held that:
 . . . a school board's power to fix salaries includes the power to increase or decrease teachers salaries except insofar as this section provides a minimum salary schedule.
The author of the opinion also cited Young vs. Allen ParishSchool Board, 349 So.2d 469 (1975) wherein the Court held that:
 . . . the minimum salary schedule set forth for teachers in LSA-R.S. 17:419 to 17:422 is not a prohibition against paying more than the minimum.
In Opinion No. 80-1209 our office concluded that:
 . . . local school boards are not prohibited from paying qualified individuals the minimum salary recommended for teachers holding a degree entitled `Specialist in Education' even if those individuals hold a different degree, if they have substantially the same training, experience, and background.
However, please remember that Articles 1 § 3 of the Louisiana Constitution of 1974 states the following concerning the Right to Individual Dignity:
 No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
LSA-R.S. 23:332 states the following concerning intentional discrimination in employment:
 A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
 (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.
Therefore, provided the local salary schedule is in compliance with the state minimum salary in LSA-R.S. 17:421.3 and is nondiscriminatory as provided in the La. Const. Article 1 § 3 and LSA-R.S. 23:332, a local school board can elect to pay a teacher or coach more than another if their experience and education merits it.
Finally, you ask whether it is legal for the School Superintendent or any person or principal to negotiate a salary beyond the scheduled amount without explicit approval of the Acadia Parish School Board.
In Attorney General Opinion No. 91-91, our office opined that the superintendent of a parish school board may not enter into contracts on behalf of the board, or obligate the board's funds without being given the power to do so by the board in its adopted rules and regulations. It further states that while the superintendent is not statutorily authorized to contract or obligate funds on behalf of the Board, the Board may, if it so chooses, grant to the superintendent such powers. (Also see Attorney General Opinion No. 92-373).
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ BETH C. LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc